UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KAREN MEYERS,

     Plaintiff,

v.                                           Case No: 8:17-cv-625-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## ORDER

     Plaintiff, Karen Meyers, seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.     Procedural Background

     Plaintiff filed an application for a period of disability on October 7, 2013. (Tr. 145.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 88–90, 93–97.) Plaintiff then requested an administrative hearing. (Tr. 101.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 26–63.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 10–21.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–9.) Plaintiff then timely filed a Complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1957, claimed disability beginning on December 19, 2012. (Tr. 145, 37.) Plaintiff has a high school education. (Tr. 169.) Plaintiff's past relevant work experience includes work as daycare worker, file clerk, order title clerk, and wire transfer clerk. (Tr. 55–57.) Plaintiff alleged disability due to low back pain, neuropathy, radiculopathy in her legs, numbness in her left hand and fingers, neck and should pain, and pain under the left breast and arm. (Tr. 168.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since December 19, 2012, the alleged onset date. (Tr. 15.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: lumbar degenerative disc arthropathy with moderate neuroforaminal narrowing and cervical degenerative changes, with no more than light canal stenosis, both without nerve encroachment (*Id.*) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform a restricted range of sedentary work. (*Id.*) Specifically, the ALJ limited Plaintiff to lifting up to twenty pounds occasionally, lifting and carrying up to ten pounds frequently, standing and/or walking for approximately two hours, and sitting for at least six hours, each in an eight-hour workday with normal breaks. (*Id.*) The ALJ also limited Plaintiff's RFC in requiring an option to sit for approximately fifteen minutes after any continuous standing or walking of thirty minutes. (*Id.*) Further, the ALJ concluded that Plaintiff should avoid climbing ropes and scaffolds, can occasionally, climb ramps, stairs, and ladders, frequently balance, and occasionally stoop, kneel,

crouch, and/or crawl. (*Id*.) The ALJ limited Plaintiff to avoiding concentrated exposure to extreme cold, excessive vibration, and industrial hazards, such as unprotected heights and the use of hazardous industrial machinery. (*Id*.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible. (Tr. 16.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), and the ALJ determined that Plaintiff could perform her past relevant work as a wire transfer clerk and an order title clerk. (Tr. 20.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (*Id*.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.

20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis,

mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in his assessment of the opinion of Dr. Larry Fishman; (2) the ALJ erred in his assessment of the opinion of Dr. Antonio Zumpano; and (3) the ALJ erred in his assessment of the opinion of Dr. Glenn Bigsby. For the reasons that follow, none of these contentions warrant reversal.

### A. Opinion of Dr. Fishman

Plaintiff contends that the ALJ failed to properly consider the opinion of Dr. Fishman. (Dkt. 18 at 2.) Specifically, Plaintiff argues that the ALJ erred in failing to consider Dr. Fishman and his diagnostic opinions. (Dkt. 18 at 5.) Plaintiff contends that Dr. Fishman "could reasonably be considered a treating physician" because he treated Plaintiff twice and, therefore, his opinions must be given substantial weight. (*Id.*) If Dr. Fishman is not considered a treating physician, Plaintiff argues that the ALJ still failed to consider Dr. Fishman's opinions and discuss the weight afforded to his opinions. (Dkt. 18 at 6.) Plaintiff further contends that the ALJ's error is not harmless because Dr. Fishman's opinions could have changed the outcome of the decision. (*Id.*)

Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity" of the claimant's impairments, including the claimant's symptoms, diagnosis and prognosis, the claimant's ability to perform despite impairments, and the claimant's physical or mental restrictions. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (internal quotation and citation omitted); 20 C.F.R. § 404.1527(a)(2).

A treating physician's opinion is "given substantial or considerable weight unless good cause is shown to the contrary" and an ALJ must specify the weight given to the treating physician's opinion. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). However, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his or her decision, so long as the decision is not "a broad rejection" that leaves the court with insufficient information to determine whether the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

Further, "[t]o the extent that the administrative law judge erred by failing to state with particularity the weight assigned to [treating physicians'] medical opinions, the error is harmless" if it does not "affect the administrative law judge's ultimate determination." *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (finding that the ALJ's decision was supported by substantial evidence and, therefore, the ALJ's failure to explicitly state the weight afforded to treating physicians' testimony was harmless error); *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975–76 (11th Cir. 2014) (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion and concluding that "when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand"); *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (finding that the ALJ's failure to state the weight given to a physician's opinions was harmless error because the opinions did not otherwise contradict the ALJ's findings); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (finding harmless error for the ALJ's failure to explicitly state what weight he afforded to a number of physicians' medical opinions when the opinions did not directly contradict the ALJ's findings).

Dr. Fishman first treated Plaintiff on August 1, 2014. (Tr. 455.) Dr. Fishman noted that Plaintiff had a history of total body pain, with more pain in her neck than in her low back. (*Id.*) Dr. Fishman reviewed an MRI of Plaintiff's lumbar spine, noting that it showed significant disc disease at L4-5. (*Id.*) He further noted that there was no evidence of thecal sac compression, but the disc was dried out and there were inflammatory changes of L4 and 5. (*Id.*) Upon physical examination, Plaintiff's gait was normal and her cervical and lumbar spine had a full range of motion. (*Id.*) Her motor examination and reflexes were normal. (*Id.*) Dr. Fishman opined that Plaintiff had diffuse muscle aches and pains and wrote her a prescription for outpatient physical therapy as well as an MRI of her cervical spine. (Tr. 456.) Dr. Fishman further diagnosed Plaintiff with lumbago and cervicalgia. (*Id.*)

On September 22, 2014, Plaintiff returned to Dr. Fishman after having an MRI taken of her cervical spine. (Tr. 461.) According to Dr. Fishman, the MRI confirmed disc herniation at C5-6. (*Id.*) He discussed with Plaintiff that surgery was an option, but Plaintiff did not want to pursue surgical intervention. (*Id.*) Dr. Fishman discussed further conservative management of Plaintiff's condition and diagnosed her with degeneration of the cervical intervertebral disc. (*Id.*)

The Commissioner argues that Plaintiff fails to show how Dr. Fishman's opinions undermine the ALJ's RFC determination. (Dkt. 21 at 8.) The Court agrees. Dr. Fishman diagnosed Plaintiff with lumbago and cervicalgia and, after reviewing Plaintiff's cervical spine MRI, with a disc herniation at C5-6. (Tr. 456, 461.) In his opinion, the ALJ addressed the opinions of Dr. Rikesh Makanji and Dr. JoAnn Gierbolini. (Tr. 17.) Dr. Makanji reviewed an earlier MRI of Plaintiff's cervical spine from May 2014 and diagnosed Plaintiff with moderate degenerative change at C5-6. (Tr. 450.) Dr. Gierbolini reviewed Plaintiff's June 2014 MRI of her lumbar spine and opined that Plaintiff had near complete loss of disc height at L4-5 with moderate left facet

arthropathy and osteophyte formation resulting in moderate left foraminal narrowing. (Tr. 451–52.) As noted by the ALJ, Dr. Gierbolini further concluded that Plaintiff had mild degenerative changes at L5-S1 resulting in mild bilateral foraminal narrowing. (Tr. 452.)

In light of the ALJ's consideration of Dr. Rikesh's and Dr. Gierbolini's opinions, it is unclear how Dr. Fishman's opinions would have changed the ALJ's assessment. Plaintiff bears the burden of showing that he has a severe impairment or combination of impairments that may qualify as a disability. *Hutchinson v. Astrue*, 408 F. App'x. 324, 326 (11th Cir. 2011) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Proof of the mere existence of an impairment does not prove the extent to which the impairment may limit Plaintiff's ability to work. *Hutchinson*, 408 F. App'x. at 326. Here, Dr. Fishman did not include in his opinions any indication that Plaintiff's back impairments would affect her ability to work. Plaintiff argues inferentially that "if Dr. Fishman's opinions were believed, the ALJ would have to assess Ms. Meyers' impairments to be more severe than he did." (Dkt. 18 at 6.) This sort of extrapolation is insufficient to warrant a reversal of the ALJ's RFC determination. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).

Moreover, the ALJ's RFC determination is supported by substantial evidence. For example, in April 2015, Dr. Phillip Henkin reported that Plaintiff had a normal range of motion in her cervical, thoracic, and lumbar spine. (Tr. 486.) Dr. Henkin further noted that Plaintiff had a normal gait and station and walked without an assistive device. (*Id.*) Overall, his physical examination findings were normal. (Tr. 485–87.) After reviewing Plaintiff's June 2014 lumbar

MRI and August 2014 cervical MRI, Dr. Henkin diagnosed Plaintiff with lumbar and cervical strains. (Tr. 487.) Dr. Henkin specifically noted that there was no evidence of disc herniation in either MRI. (*Id*.) Dr. Henkin reassured Plaintiff that surgery was not necessary and recommended that Plaintiff walk at home and do abdominal core strengthening exercises. (*Id*.) Likewise, Dr. Frank Sirchia reported in March 2015 that Plaintiff had a normal gait and stance. (Tr. 592.) Consulting physician Dr. Glenn Bigsby opined that Plaintiff is capable of performing light work. (Tr. 78–80.) Dr. Bigsby further found that Plaintiff is able to stand, walk, and/or sit for six hours in an eight-hour workday and can occasionally climb ladders, ropes, and/or scaffolds, frequently climb ramps and stairs, and can frequently balance, stoop, kneel, crouch, and crawl. (*Id*.) The ALJ afforded Dr. Bigsby's opinion great weight, noting that the opinion is consistent with the record. (Tr. 18.) However, the ALJ limited Plaintiff to sedentary work and provided additional restrictions in the RFC assessment based on the opinions of Dr. Zumpano. (*Id*.) With regard to Plaintiff's daily activity, Plaintiff reported that she is able to cook, clean, do laundry, iron, sweep, feed her animals, and run errands. (Tr. 197–98.) During the hearing, Plaintiff testified that she completes core exercises and does thirty minutes of water aerobics every day (Tr. 47–48.) Thus, "[t]o the extent that the administrative law judge erred by failing to state with particularity the weight assigned to [Dr. Fishman's] medical opinions, the error is harmless" because it does not "affect the administrative law judge's ultimate determination." *Hunter*, 609 F. App'x at 558 (finding that the ALJ's decision was supported by substantial evidence and, therefore, the ALJ's failure to explicitly state the weight afforded to treating physicians' testimony was harmless error); *Tillman*, 559 F. App'x at 975–76 (recognizing harmless error analysis in the context of an ALJ's failure to address a treating source's opinion and concluding that "when the ALJ's error did not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand"); *Caldwell*,

261 F. App'x at 191 (finding that the ALJ's failure to state the weight given to a physician's opinions was harmless error because the opinions did not otherwise contradict the ALJ's findings); *Wright*, 153 F. App'x at 684 (finding harmless error for the ALJ's failure to explicitly state what weight he afforded to a number of physicians' medical opinions when the opinions did not directly contradict the ALJ's findings).

### B.     Opinion of Dr. Zumpano

Plaintiff next contends that the ALJ erred in his assessment of treating physician Dr. Zumpano's opinion.  (Dkt. 18 at 6.)  Plaintiff argues that although the ALJ concluded that Dr. Zumpano's opinion is not consistent with the record, there are objective findings from other physicians that support Dr. Zumpano's opinion.  (Dkt. 18 at 8–9.)

On August 20, 2015, Dr. Zumpano completed a work-related physical activities assessment of Plaintiff.  (Tr. 604–08.)  Dr. Zumpano opined that Plaintiff can occasionally lift and carry ten pounds and frequently lift and carry less than ten pounds.  (Tr. 604.)  Dr. Zumpano further concluded that Plaintiff can stand, walk, and/or sit less than two hours in an eight-hour workday and must change positions every thirty minutes while sitting and every fifteen minutes while standing or walking.  (Tr. 604–05.)  He found that Plaintiff will need to lie down at unpredictable intervals approximately one to three times during an eight-hour workday.  (Tr. 605.)  Dr. Zumpano found that Plaintiff is not able to crouch or climb ladders, but can occasionally twist, stoop, and climb stairs.  (Tr. 606.)  Further, Dr. Zumpano opined that Plaintiff must avoid all exposure to extreme cold, extreme heat, high humidity, fumes, odors, dusts, gases and avoid concentrated exposure to perfumes, solvents, cleaners, and chemicals.  (Tr. 607.)  Last, Dr. Zumpano opined that Plaintiff should be allowed to elevate her legs and apply heat or cold as needed.  (*Id*.)

The ALJ gave little weight to Dr. Zumpano's August 2015 opinion. (Tr. 19.) First, the ALJ concluded that the opinion was only "somewhat consistent" with Dr. Zumpano's own treatment notes and the MRI reports. (*Id.*) Specifically, the ALJ reasoned that Dr. Zumpano frequently noted that Plaintiff had a normal gait with no acute distress. (*Id.*) Further, the ALJ found that Dr. Zumpano's opinion was not corroborated by supporting medical evidence. (*Id.*) The ALJ explained that Dr. Zumpano's opinion is inconsistent with Dr. Sirchia's findings and Dr. Henkin's examination findings from only four months prior. (*Id.*)

Medical opinions of treating physicians must be given substantial or considerable weight unless good cause is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). Good cause exists when the physician's opinion is not bolstered by the evidence, the evidence supported a contrary finding, or the physician's opinion is conclusory or inconsistent with his or her own medical records. *Winschel*, 631 F.3d at 1179. Here, Plaintiff argues that "even if [Dr. Zumpano's opinion] is not consistent with all of the other evidence, that does not mean that [the opinion] should be given little weight." (Dkt. 18 at 8.) However, the ALJ explained his reasoning for affording Dr. Zumpano's opinion little weight, stating that it is not supported by Dr. Zumpano's own treatment notes and is inconsistent with the opinions of Dr. Henkin and Dr. Sirchia. (Tr. 19.) This is an appropriate articulation of good cause. *See Crawford*, 363 F.3d at 1159.

Upon review of the evidence, the ALJ's decision to afford Dr. Zumpano's August 2015 opinion little weight is supported by substantial evidence. The ALJ thoroughly summarized Plaintiff's treatment with Dr. Zumpano prior to August 2015. (Tr. 17.) The ALJ specifically cited Dr. Zumpano's July 2013 treatment notes, wherein he reported that Plaintiff had some degenerative changes and signs of arthritis degenerative disease, but Plaintiff had no spine

tenderness to palpitation and did not report any pain. (Tr. 17, 338.) Further, as noted by the ALJ, Dr. Zumpano frequently noted that Plaintiff had a normal gait with no acute distress. (Tr. 287, 291, 317, 320, 325, 328, 354.) Additionally, Dr. Zumpano's opinion is inconsistent with Dr. Sirchia's March 2015 report that Plaintiff had a normal gait and stance and the findings of Dr. Henkins, described above. *See supra* Section A. Dr. Henkin's April 2015 physical examination findings were normal, and, after reviewing the MRIs of Plaintiff's spine, he opined that there was no evidence of disc herniation. (Tr. 485–87.) Therefore, the ALJ's decision to afford little weight to Dr. Zumpano's opinion is supported by substantial evidence, and Plaintiff's second contention does not warrant reversal.

Further, Plaintiff makes several arguments that the opinions of Plaintiff's other physicians support Dr. Zumpano's opinion. (Dkt. 18 at 8–12.) To the extent that Plaintiff points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of the court's appellate review, which precludes us from "re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner]…even if the evidence preponderates against" the decision. *Moore*, 405 F.3d at 1213 (quoting *Bloodsworth*, 703 F.2d at 1239). This court may not reweigh the evidence and decide facts anew and must defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it. *See Dyer*, 395 F.3d at 1210.

### C.    Opinion of Dr. Bigsby

In her last contention, Plaintiff argues that the ALJ erred in affording consulting physician Dr. Bigsby's opinion great weight. (Dkt. 18 at 12–13.) Plaintiff argues that opinions of consulting physicians do not alone constitute substantial evidence. (*Id*.) Plaintiff mainly contends that Dr. Bigsby's opinion should not have been given great weight because Dr. Bigsby rendered his opinion

in December 2013 before Plaintiff's 2014 MRIs were conducted and before Plaintiff received additional treatment from other physicians.  (Dkt. 18 at 13.)

As further described in Section A herein, consulting physician Dr. Bigsby opined that Plaintiff is capable of performing light work.  (Tr. 78–80.)  Dr. Bigsby further found that Plaintiff is able to stand, walk, and/or sit for six hours in an eight-hour workday and can occasionally climb ladders, ropes, and/or scaffolds, frequently climb ramps and stairs, and can frequently balance, stoop, kneel, crouch, and crawl.  (Tr. 78–80.)  The ALJ afforded Dr. Bigsby's opinion great weight, noting that the opinion is consistent with the record, but limited Plaintiff to sedentary work and provided additional restrictions in the RFC assessment based on the subsequent report from Dr. Zumpano.  (Tr. 18.)

Contrary to Plaintiff's argument, the ALJ did not only rely on Dr. Bigsby's opinion in determining Plaintiff's RFC.  The ALJ clearly considered the record and relied upon the opinions of Dr. Henkin, Dr. Sirchia, and Plaintiff's daily activities, as well as Dr. Bigsby's opinion.  (Tr. 17–19.)  As discussed above, the ALJ's decision is supported by substantial evidence.  Further, Plaintiff's argument that the ALJ erred because there is evidence in the record that occurred after Dr. Bigsby's opinion lacks merit.  The ALJ explicitly recognized this fact and did not adopt Dr. Bigsby's opinion in its entirety, limiting Plaintiff to sedentary work in light of Dr. Zumpano's subsequent assessment.  (Tr. 18.)  Thus, Plaintiff's final contention does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1.  The decision of the Commissioner is **AFFIRMED**.

2.  The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on January 26, 2018.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record